1

2

3

4                                                **E-FILED on**  1/15/2013

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12   DONNA BERNARDI, an individual, and          No. C-11-05453 RMW
     SMITESH MAHENDRA PARMAR, an
13   individual,

14            Plaintiffs,

15       v.                                       ORDER GRANTING IN PART AND
                                                  DENYING IN PART DEFENDANTS'
16   DEUTSCHE BANK NATIONAL TRUST                 MOTION TO DISMISS
     COMPANY AMERICA AS TRUSTEE;
17   AURORA LOAN SERVICES, LLC;
     AURORA BANK FSB; and Does 1-10,
18   inclusive,                                   **[Re Docket No. 19]**

19            Defendants.

20

21          Defendants Deutsche Bank National Trust Company Americas, as Trustee ("Deutsche

22   Trustee"), Aurora Loan Services LLC ("Aurora LLC"), and Aurora Bank FSB ("Aurora Bank")

23   move to dismiss plaintiffs' First Amended Complaint ("FAC").  Plaintiffs oppose the motion.  On

24   June 1, 2012, the court held a hearing to consider defendants' motion.  Having considered the papers

25   submitted by the parties and the arguments of counsel, and for the reasons set forth below, the court

26   grants in part and denies in part the motion.

27

28

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS—No. C-11-05453 RMW
LJP

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    **I. BACKGROUND**

2        In September 2005, plaintiffs Donna Bernardi and Smitesh Parmar entered into a mortgage

3    loan transaction with SCME Mortgage Bankers, Inc. ("SCME") to acquire residential property

4    located in Felton, California (the "Felton Property"). FAC ¶ 1. Plaintiffs executed a promissory

5    note ("Note") in favor of SCME in the amount of $436,000, secured by a deed of trust ("Deed of

6    Trust"). *Id.* The Deed of Trust named plaintiffs as the borrowers, SCME as the lender, and

7    Mortgage Electronic Registration Systems Inc. ("MERS") as the nominee and beneficiary. *Id.* ¶ 22

8    & Exh. A.

9        Plaintiffs allege that, from the date of origination, defendants Deutsche Trustee, Aurora LLC,

10   and/or Aurora Bank demanded monthly mortgage payments and continued to collect payments for

11   approximately seven years. *Id.* ¶ 54. Plaintiffs also allege that, shortly after origination, SCME sold

12   their Note and Deed of Trust to an unknown entity or entities. *Id.* ¶ 23.

13       In October 2010, plaintiffs sent a Qualified Written Request to Aurora LLC, requesting

14   documentation demonstrating who actually owned their Note. *Id.* ¶ 28. On November 20, 2010,

15   Aurora LLC responded, identifying "Deutsche Bank Trust Company Americas, in trust for,

16   Residential Accredit Loans, Inc. Mortgage Asset-Backed Pass-Through Certificates, Series 2005-

17   Q03" ("RALI Trust") as the then-current owner of the debt. *Id.* ¶ 29 & Exh. H. Plaintiffs allege,

18   however, that their loan was never properly assigned to the RALI Trust under the terms of the Trust

19   Agreement (a.k.a. the Pooling and Services Agreement), such that the loan was never a part of the

20   trust res. *Id.* ¶¶ 31-32. Thus, plaintiffs allege, Deutsche Trustee is a third-party stranger to

21   plaintiffs' Note and has no legal authority to enforce the Note or Deed of Trust. *Id.* ¶ 36.

22       On August 1, 2011, an Assignment of Deed of Trust ("Assignment") was recorded in the

23   Santa Cruz County Recorder's Office, which had been executed by Stacy Sandoz as Vice President

24   of MERS. *Id.* ¶ 24 & Exh. B. The Assignment purported to assign and transfer all beneficial

25   interest under the Deed of Trust to Aurora LLC. *Id.* Plaintiffs contend that the Assignment is

26   invalid and that no legal transfer to Aurora LLC ever occurred. *Id.* Specifically, plaintiffs contend

27   that the Assignment was purportedly executed on July 22, 2011 by MERS as nominee for SCME,

28   but SMCE had ceased business operations in 2007. *Id.* Furthermore, plaintiffs allege that Stacy

Sandoz is not a Vice President of MERS and was never appointed by the MERS Board of Directors, and thus she lacked authority to sign on behalf of MERS. *Id.* Plaintiffs also allege that Stacy Sandoz is a known "robo-signer," who signs numerous foreclosure documents without any personal knowledge or corporate authority. *Id.* Plaintiffs specifically contend that Stacy Sandoz is not an employee of MERS but rather of Aurora Bank. *Id.* Because the Assignment is invalid, plaintiffs allege, Aurora LLC is also a third-party stranger to plaintiffs' Note and has no legal authority to enforce the Note or Deed of Trust. *Id.* ¶ 36.

On October 13, 2009, a Notice of Default ("NOD") was recorded, which had been signed by Keli Tune as authorized signer for Quality Loan Service Corp. ("Quality") as agent for beneficiary LSI Title Company. *Id.* ¶ 37 & Exh. J. On November 25, 2009, a Substitution of Trustee ("2009 Substitution") was recorded, which was dated October 13, 2009 and purported to substitute Quality Loan Service Corporation as trustee under plaintiffs' Deed of Trust. *Id.* ¶ 38 & Exh. K. The 2009 Substitution was signed by Debra Dente as Vice President of MERS. *Id.* Similar to the Assignment, plaintiffs contend that the 2009 Substitution is invalid because it was purportedly executed on behalf of SCME even though SCME had ceased business operations, and because Debra Dente is not an employee of MERS and did not have authority to sign on its behalf. *Id.* ¶ 40. Plaintiffs also contend that the NOD is void because Quality recorded the NOD before it was substituted as trustee. *Id.* ¶ 42.

Plaintiffs allege that Aurora Bank is acting on behalf of a party, either Deutsche Trustee or Aurora LLC, who is not the lender and with whom it has no agency relationship. *Id.* ¶ 43. Thus, plaintiffs contend, they have been deprived of the right to negotiate with the true lender to explore alternatives to foreclosure. *Id.* Plaintiffs claim they do not know who the current beneficiary of their Note and Deed of Trust is and they dispute the amount owed. *Id.* ¶¶ 44-45. They seek the court's assistance in identifying the true creditor and the amount they actually owe. *Id.* ¶ 44. Plaintiffs allege that they have been harmed in that they are subject to double financial jeopardy after paying the wrong creditor, their credit and credit score have been damaged, and the title to their home has been clouded. *Id.* ¶¶ 45-48. Plaintiffs' First Amended Complaint asserts causes of action for (1) quasi-contract, (2) violation of 15 U.S.C. § 1692e, part of the Fair Debt Collection Practices

1    Act ("FDCPA"), (3) violation of 15 U.S.C. § 1641(g), part of the Truth In Lending Act ("TILA"), (4)

2    accounting, and (5) cancellation of instruments pursuant to Cal. Civ. Code § 3412.

## II. ANALYSIS

### A.    Bernardi's Claims

Defendants first argue that plaintiff Bernardi's claims are barred because she failed to

disclose them when she filed for bankruptcy on November 21, 2011 and later received a discharge

on February 17, 2012.[1] "In the bankruptcy context, a party is judicially estopped from asserting a

cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules

or disclosure statements." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir.

2001). Here, Bernardi was pursuing multiple cases in federal court at the time that she filed for

Chapter 7 bankruptcy. In her Schedule B disclosure of personal property and her Schedule C

disclosure of property claimed as exempt, Bernardi listed "Active Federal Civil Litigation Case for

mortgage securitization and fraud See SOFA [Statement of Financial Affairs] for further details."

Dkt. No. 19-2 at 53, 55. In her Statement of Financial Affairs, however, Bernardi identified only a

case against JPMorgan Chase Bank, N.A., Case No. 5:11-cv-04543, and not the present action. *Id.*

at 68.

Bernardi claims that she did specifically identify this action and its relationship to the Felton

Property, in her Individual Debtors Statement of Intention. In the section for identifying debts

secured by property of the estate, Bernardi listed a debt to Aurora Bank secured by the Felton

Property and indicated that it was "[c]urrently in active Federal Civil Litigation." *Id.* at 75.

Plaintiffs argue that Bernardi therefore sufficiently identified her present claims to the bankruptcy

trustee and that the claims were known to the trustee and therefore exempted from becoming part of

the bankruptcy estate.

While Bernardi's filings may have indicated that there was active litigation concerning the

Felton Property, however, the documents did not disclose that Bernardi had affirmative claims

---

[1] Defendants request that the court take judicial notice of dockets and filings in various other state and federal court proceedings, including Bernardi's bankruptcy court filings. As these documents are public records, defendants' request for judicial notice is granted. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment.").

United States District Court
For the Northern District of California

against defendants.  In other words, Bernardi's filings did not clearly indicate that she had assets, as opposed to, for example, potential liabilities, in connection with litigation over the Felton Property. And when she was asked to identify personal property constituting "other contingent and unliquidated claims of every nature," Bernardi referred to her Statement of Financial Affairs, which listed only her case against JPMorgan.  Thus, as relates to this case, the only asset Bernardi identified was the Felton Property itself, not the claims she is now asserting.  Moreover, the court in *Hamilton* found that notifying the trustee of the pending claims by other means is insufficient to escape judicial estoppel; rather, the debtor has a statutory duty of disclosure to properly schedule his claims because both the court and creditors base their actions on the disclosure statements and schedules.  *See* 270 F.3d at 784.

Since Bernardi failed to disclose the present claims as an asset in bankruptcy and she has already received the benefit of a discharge, she is now judicially estopped from asserting the claims, and the claims must be dismissed with prejudice.  *See id.* ("This court has held that a debtor who failed to disclose a pending claim as an asset in a bankruptcy proceeding where debts were permanently discharged was estopped from pursuing such claim in a subsequent proceeding."); *HPG Corp. v. Aurora Loan Servs., LLC*, 436 B.R. 569, 578-79 (E.D. Cal. 2010) (dismissing debtors' claims without leave to amend).

**B.     Quasi-Contract**

Defendants argue that plaintiffs cannot state a claim for quasi-contract against Deutsche Trustee or Aurora Bank because plaintiffs lack standing to challenge the alleged failure to comply with the Pooling and Services Agreement.  Plaintiffs' "failed securitization" theory has been rejected by many courts.  *See, e.g.*, *Sami v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 38466 at *15-16 (N.D. Cal. 2012) ("To the extent Plaintiff bases her claims on the theory that Wells Fargo failed to comply with the terms of the PSA, the court finds that she lacks standing to do so because she is neither a party to, nor a third party beneficiary of, that agreement."); *Correia v. Deutsche Bank Nat'l Trust Co. (In re Correia)*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (finding debtors "lacked standing to challenge the mortgage's chain of title under the PSA").  In *Armeni v. America's Wholesale Lender*, 2012 U.S. Dist. LEXIS 9672 at *5-6 (C.D. Cal. 2012), the court rejected the specific theory asserted

**United States District Court**
For the Northern District of California

1    here: that the trustee of the loan pool lacks authority to collect on the loan due to lack of compliance

2    with the trust agreement.

3            Plaintiffs' authorities are distinguishable or unhelpful.  In *Johnson v. HSBC Bank USA*, 2012

4    U.S. Dist LEXIS 36798 at *5-7 (S.D. Cal. 2012), the court distinguished *Armeni* because the

5    plaintiff had alleged both violations of the PSA and relevant law and held "BOA has not sufficiently

6    demonstrated that violations of law associated with the loan's securitization can go unchecked

7    because Plaintiff is not a party to the PSA."  Similarly, in *Wise v. Wells Fargo Bank, N.A.*, 2012 U.S.

8    Dist. LEXIS 53387 at *7 (C.D. Cal. 2012), the plaintiff alleged failure to follow both the terms of

9    the PSA and New York trust law.  The defendants only argued that a typical mortgage-based

10   securitization and transfer into a loan pool would be proper; the court found such arguments were

11   not directly on point and concluded that the plaintiff "alleges a fairly unique set of facts here

12   sufficient to state a claim for declaratory judgment."  *Id.*  Here, plaintiffs have not alleged any

13   violations of law associated with the securitization, only that their mortgage was not properly

14   assigned to the RALI Trust before the closing date set forth in the Trust Agreement, FAC ¶ 32.  And

15   plaintiffs' theory of failed securitization is hardly unique, as evidenced by the numerous decisions

16   addressing the situation.

17           Notably, plaintiffs' only contention is that their loan was not properly assigned to the trust

18   pursuant to the Trust Agreement.  Plaintiffs do not contend that the loan documents fail to reflect

19   Deutsche Trustee's interest in the loan, despite plaintiffs' apparent possession of those documents.

20   *See* FAC, Exh. H at 3 (letter from Aurora LLC in response to qualified written request stating that

21   copies of the Note and Security Interest were enclosed with the letter).  Nor do plaintiffs allege that

22   any competing claimant has ever stepped forward demanding mortgage payments.  Moreover,

23   plaintiffs do not dispute that they owe mortgage payments to *someone*.  At least one court has

24   suggested that plaintiffs would lack standing to claim that the payments should rightfully have gone

25   to someone else.  *See Derusseau v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 42901 at *17 n.4

26   (S.D. Cal. 2012) ("To the extent Plaintiff alleges Defendants owe restitution to a third party, she

27   lacks standing to assert such a claim.").  Thus, for the foregoing reasons, plaintiffs have not stated a

28   cognizable claim for quasi-contract against Deutsche Trustee or Aurora Bank.

United States District Court
For the Northern District of California

As to Aurora LLC, defendants argue that plaintiffs fail to state a claim because plaintiffs have not sufficiently alleged that the Assignment was invalid. Regardless of whether the Assignment is valid, however, it is not clear to the court how that issue is relevant to plaintiffs' claim for quasi-contract. The Assignment was executed on July 22, 2011, FAC ¶ 24, but plaintiffs essentially concede that they were in default by then, *see id.* ¶ 61. Thus, the court does not see how plaintiffs could have paid, and Aurora LLC been unjustly enriched by accepting, any payments that depended on the Assignment. Prior to the Assignment, it appears that plaintiffs had some kind of relationship with Aurora LLC, though plaintiffs have not clearly explained Aurora's full role. As alleged, plaintiffs sent Aurora LLC a qualified written request in October 2010, and refer to Aurora LLC as "purported prior servicer." *Id.* ¶ 28. In their opposition, plaintiffs also rely on the allegation that "Deutsche Trustee, Aurora [LLC], and/or Aurora [Bank]" demanded and collected payments starting in September 2005. Dkt. No. 20 at 10:28-11:2; FAC ¶ 50. The FAC is completely silent, however, as to whether Aurora LLC did or did not have authority to collect payments prior to being assigned beneficial interest in the Deed of Trust. Thus, plaintiffs allegations do not show that Aurora LLC collected any payments to which it was not entitled, and their claim for quasi-contract is dismissed.

### C. Fair Debt Collection Practices Act

Defendants argue that plaintiffs' FDCPA claim fails because (1) the subject loan is not a consumer "debt" within the statutory definition, (2) defendants are not "debt collectors," and (3) there are no allegations that defendants made any false, deceptive, or misleading misrepresentations. The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The term "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 1692a(5). A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly,

United States District Court
For the Northern District of California

1   debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6).  Specifically excluded

2   from the definition of "debt collector" are persons collecting a debt "to the extent such activity (i) is

3   incidental to a bona fide fiduciary obligation . . . [or] (iii) concerns a debt which was not in default at

4   the time it was obtained by such person." *Id.* § 1692a(6)(F).

5          Defendants argue that plaintiffs are bound by Bernardi's statements in her bankruptcy filing

6   that she was operating a "rental properties" business at the Fremont Property.  Defendants further

7   point out that plaintiffs have asserted FDCPA claims relating to two other properties for which loans

8   were obtained in 2004-2006.  These loans, defendants argue, could not all be considered "debts"

9   subject to the FDCPA.  The court finds these arguments unpersuasive for several reasons.  First,

10  defendants cite generally to 31 pages of bankruptcy filings without identifying the specific statement

11  on which they rely.  From the court's own examination, it appears that Bernardi stated she owned the

12  Felton Property in fee simple while the other two properties were owned by a rental properties

13  business in which Bernardi had a 50% interest.  *See* Dkt. No. 19-2 at 50, 52.  That hardly contradicts

14  plaintiffs' allegation that the Felton Property is their primary residence, FAC ¶ 74.  Second, even if

15  plaintiffs have made inconsistent statements elsewhere, defendants have not shown that these trigger

16  judicial estoppel in the same manner as Bernardi's failure to disclose her present claims in her

17  bankruptcy schedules.  Third, when the allegations in the complaint are accepted as true and all

18  reasonable inferences are drawn in plaintiffs' favor, the court cannot conclude that the Felton

19  Property was not plaintiffs' personal residence or that the loan was entered for other than personal,

20  family, or household purposes.

21         Defendants next argue that Deutsche Trustee and Aurora Bank are not debt collectors.  The

22  court agrees that plaintiffs have failed to allege that either defendant is a debt collector.  As to

23  Deutsche Trustee, plaintiffs allege that it is in the business of collecting debts on behalf of the

24  investors in the RALI Trust.  FAC ¶ 60.  However, it does not appear that plaintiffs were in default

25  at the time Deutsche Trustee began collecting payments.  Plaintiffs' allegations do not directly

26  address the issue, but the closing date of the RALI Trust was October 28, 2005, FAC ¶ 32, which is

27  well before plaintiffs' alleged default.  In addition, Deutsche Trustee appears to have been collecting

28  payments pursuant to its fiduciary duty to the RALI Trust investors, and thus it is not included in the

1   definition of a debt collector.  *See* 15 U.S.C. § 1692a(6)(F)(i).  As to Aurora Bank, plaintiffs allege

2   that it received servicing rights to plaintiffs' loan on July 21, 2011, after plaintiffs were purportedly

3   already in default.  FAC ¶ 61.  However, plaintiffs do not allege that Aurora Bank regularly collects

4   debts on behalf of third parties or that it is in the business of debt collection.

5         Finally, defendants argue that the allegations do not specify any conduct that would violate

6   the FDCPA.  Plaintiffs respond by referring to paragraphs 61-70 of the FAC.  Those paragraphs

7   generically allege that defendants violated the FDCPA by falsely claiming to be assigned plaintiffs'

8   debt, falsely representing the status of plaintiffs' debt, and improperly crediting plaintiffs' account.

9   "Courts have required factual particularity regarding the dates and contents of alleged

10  communications for FDCPA and Rosenthal Act claims."  *Lopez v. Professional Collection*

11  *Consultants*, 2011 WL 4964886 at *2 (C.D. Cal. 2011) (collecting cases).  Plaintiffs have not

12  identified any specific dates or statements, nor even the time period of each defendants' conduct.

13  Indeed, the court has difficulty discerning from the FAC the precise role of each defendant,

14  including which of them interacted directly with plaintiffs and when.

15        Because plaintiffs have not alleged that defendants are debt collectors, and have not alleged

16  unlawful conduct with sufficient particularity, plaintiffs' FDCPA claim is dismissed.

17        **D.    Truth In Lending Act**

18        Plaintiffs allege that Deutsche Trustee and Aurora LLC violated TILA by failing to provide

19  notice within thirty days of the transfer or assignment of their mortgage loan pursuant to § 131(g) of

20  TILA, 15 U.S.C. § 1641(g) ("[N]ot later than 30 days after the date on which a mortgage loan is sold

21  or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of

22  the debt shall notify the borrower in writing of such transfer . . . .").  Defendants argue that the

23  transfer must have occurred on or after the effective date of the provision, which is May 20, 2009.

24  *See* 111 Pub. L. 22, 123 Stat. 1632 (May 20, 2009); *Jara v. Aurora Loan Servs.*, 2012 U.S. Dist.

25  LEXIS 45532 at *13 n.6 (N. D. Cal. 2012).  As to Deutsche Trustee, plaintiffs do not allege when it

26  became a purported owner of the loan, nor do plaintiffs address the issue of the effective date.  Since

27  the RALI Trust was formed in 2005, FAC ¶ 32, it is likely that the transfer occurred well before the

28

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1    amendment to TILA, even if plaintiffs contend that the transfer did not comply with the Trust

2    Agreement.  Thus, plaintiffs fail to state a claim against Deutsche Trustee.

3         As to Aurora LLC, plaintiffs rely on the Assignment, which was executed in 2011.  In

4    response, defendants argue that an assignment of beneficial interest in the Deed of Trust is not the

5    same as a transfer of the loan itself and therefore does not trigger the TILA notice provision.

6    Defendants rely on this court's decision in *Aikin v. Neilson (In re Cedar Funding, Inc.)*, 2012 U.S.

7    Dist. LEXIS 45538 at *11 (N.D. Cal. 2012), for the proposition that "the beneficial interest under

8    the deed of trust is separate and distinct from ownership of the loan, and the statute only applies to

9    ownership of the loan."  That decision, however, simply acknowledged that, under California law,

10   "endorsement of a note may transfer ownership of the loan to the transferee even if the deed of trust

11   is not separately assigned."  *Id.* (citing *Cockerell v. Title Ins. & Trust Co.*, 42 Cal.2d 284 (1954)).

12   That does not bear on whether assigning the deed of trust, as happened here, can effect a transfer of

13   ownership of the loan.  This court also concluded in *Aikin* that the appellants did not have

14   enforceable secured interests until the deeds of trust were recorded, *id.* at *12, and TILA defines

15   "mortgage loan" as "any consumer credit transaction *that is secured* by the principal dwelling of a

16   consumer," 15 U.S.C. § 1641(g)(2) (emphasis added).

17        Defendants cite no other cases, and the court has found none that are on point.  The closest is

18   *Che v. Aurora Loan Services, LLC*, 2012 U.S. Dist. LEXIS 51642 at *6-10 (C.D. Cal. 2012), which

19   held that Aurora LLC was properly considered a loan servicer rather than a creditor and thus not

20   subject to TILA.  The court concluded that Aurora LLC did not own the loan despite having been

21   assigned the deed of trust by MERS.  *Id.* at *2, 9.  *Che*, however, was decided on summary judgment

22   and apparently relied on a declaration from Aurora LLC that it had never owned the plaintiff's loan.

23   *See id.* at *9.  Here, plaintiffs do not specifically allege that Aurora LLC became the owner of their

24   loan, but they do contend that Aurora LLC became assignee and creditor, FAC ¶ 80.  Because the

25   issue appears to be legally complex and possibly unsettled, and defendants did not raise the

26   argument until their reply brief, the court declines to dismiss plaintiffs' TILA claim against Aurora

27   LLC at this time.

28        **E.    Accounting**

**United States District Court**
For the Northern District of California

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009).  Defendants argue that plaintiffs have failed to plead either prong.  As to the second prong, "[a]n action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." *Id.*  Plaintiffs allege that they have made mortgage payments to defendants for approximately six years.  FAC ¶ 96.  They contend that "none of this money was actually owed" to defendants and claim that the monies must be credited or returned "in full." *Id.*  These allegations do not demonstrate that the amount due can only be ascertained by an accounting; rather, plaintiffs should have access to the payment terms of their loan, if not also records of the payments they made to defendants.  In a similar situation, the court in *Kazovsky v. Metrocities Mortgage., LLC*, 2012 U.S. Dist. LEXIS 7236 at *21 (C.D. Cal. 2012), rejected a claim for accounting, finding:

> Plaintiff's claim for an accounting, as pleaded, merely seeks the return of all mortgage payments she has already made to Defendants.  There is no indication in Plaintiff's FAC that the payment terms contained in her Note were anything but ordinary.  Therefore, Plaintiff is in possession of all materials necessary for her to reduce her claim to a sum that can be made certain by a relatively simple calculation.

Similar to the plaintiff in *Kazovsky*, plaintiffs here allege that "[t]he amount of the money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions."  FAC ¶ 97.  In light of the factual situation, however, the court finds that such a contention is not plausible.  *See Kazovsky*, 2012 U.S. Dist. LEXIS 7236 at *21 ("This contention strains credulity.").  Thus, plaintiffs' claim for accounting is dismissed.  Although the court is skeptical of plaintiffs' ability to cure their pleading, the court will allow plaintiffs a final opportunity to amend.

### F.    Cancellation of Instruments

Plaintiffs seek cancellation of the Assignment, 2009 Substitution, and NOD.  Defendants argue that plaintiffs have failed to allege that any of these documents are invalid.  As to the Assignment and 2009 Substitution, plaintiffs make similar allegations that the documents were executed by MERS as nominee for SCME but SCME had already gone out of business; the signers

did not have authority to sign on behalf of MERS; and the locations where the documents were notarized suggest that the signers were in fact employees of other entities and not MERS. Defendants argue that the allegations of the signers' other employment are "meaningless," as MERS acts through its members who have certifying officers authorized to execute documents on its behalf. At least one court has relied on the Ninth Circuit's recognition of this fact to reject allegations that an assignment was a "possible forgery." *See Boyter v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 47961 (N.D. Cal. 2012) ("[A]s the Ninth Circuit has explained, 'MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS.' . . . . Without more specific facts suggesting that the notarized document was in fact forged, the Court finds that plaintiff's allegations insufficient." (citations omitted)). Plaintiffs contend that *Tang v. Bank of America, N.A.*, No. CV11-2048 (C.D. Cal. March 19, 2012), holds otherwise, but the court was unable to find the language on which plaintiffs rely. *Compare* Dkt. No. 20 at 12 *with Tang v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 38642 (C.D. Cal. 2012). *Tang* did, however, find plausible the plaintiff's allegations that the person executing a substitution of trustee on behalf of Bank of America did not have the requisite agency relationship. 2012 U.S. Dist. LEXIS 38642 at *32-34. The court noted:

> Plaintiffs have submitted documents that show Sevillano acting as an agent of MERS only a few months before acting as an agent for BOA. Compl. Ex. H. In order for the Substitution of Trustee to have been validly executed by Sevillano as an agent of BOA, (1) Sevillano must have changed employment between March and August 2010, (2) Sevillano must be an agent for both BOA and MERS, or (3) MERS itself must be an agent of BOA. The Court presently has no information to suggest that one of these possibilities is true; the relationship between MERS, BOA, and Sevillano in August 2010 remains unclear. The Court thus finds Plaintiffs' allegations of robo-signing plausible to proceed.

*Id.* Since all inferences must be drawn in plaintiffs' favor at this stage, the court finds that they have plausibly alleged that Stacy Sandoz and Debra Dente were employees of Aurora Bank and Quality, respectively, and did not have the authority to sign on behalf of MERS.

As to the NOD, plaintiffs allege that it "is void since Quality recorded the instrument without being 'trustee, mortgagee, beneficiary, or authorized agent' of the true creditor." FAC ¶ 41. Plaintiffs allege, without further elaboration, that Keli Tune signed without agency authority from the true creditor. *Id.* Plaintiffs also allege that the NOD is void because Quality recorded it before

United States District Court
For the Northern District of California

Quality was substituted as the trustee.  *Id.* ¶ 42.  However, as defendants point out, the NOD was executed by Quality "as agent for beneficiary," not as trustee.  FAC, Exh. J.  Plaintiffs' allegations do not at all address whether Quality properly recorded the NOD in that role.  Nor do plaintiffs allege any facts to support their conclusory allegation that Keli Tune lacked authority to sign.  Thus, plaintiffs' claim for cancellation of the NOD is dismissed.

### III.  ORDER

For the foregoing reasons, the court grants in part and denies in part the motion to dismiss as follows:

1. Plaintiff Bernardi's claims are dismissed with prejudice;

2. Plaintiff Parmar's claims for quasi-contract, violation of the FDCPA, accounting are dismissed in their entirety, with leave to amend;

3. Plaintiff Parmar's claim for violation of TILA against Deutsche Trustee is dismissed with leave to amend;

4. Plaintiff Parmar's claim for cancellation of the Notice of Default is dismissed with leave to amend; and

5. The remainder of the motion to dismiss is denied.

Plaintiff Parmar has twenty (20) days from the date of this order to file an amended complaint, if he can do so in good faith.

DATED:        January 15, 2013

RONALD M. WHYTE
United States District Judge