UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONNA BERNARDI, an individual, and SMITESH MAHENDRA PARMAR, and individual,<br><br>Plaintiffs,<br><br>v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY AMERICAS AS TRUSTEE; AURORA LOAN SERVICES, LLC; AURORA BANK FSB; and Does 1-10, inclusive,<br><br>Defendants. | Case No. C-11-05453-RMW<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS PARMAR'S FIFTH CLAIM FOR RELIEF**<br><br>**[Re Docket No. 31]** |

On February 18, 2013, Deutsche Bank National Trust Company Americas as Trustee ("Deutsche Trustee"), Aurora Loan Services, LLC (purported assignee of plaintiffs' note and deed of trust) ("Aurora LLC"), and Aurora Bank FSB ("Aurora Bank") (purported servicer of the plaintiffs' mortgage loan) ("Aurora Bank") (collectively "defendants") moved to dismiss plaintiff Smitesh Mahendra Parmar's ("Parmar") fifth cause of action on the basis of claim preclusion. Dkt. No. 31.  Having considered the papers submitted by the parties and the arguments of

counsel, and for the reasons set forth below, this court GRANTS-IN-PART and DENIES-IN-PART defendants' motion to dismiss.

## I. BACKGROUND

This case arises from plaintiffs Donna Bernardi ("Bernardi") and Parmar's mortgage loan transaction with SCME Mortgage Bankers, Inc. ("SCME") to acquire residential property located in Felton, California.  A detailed description of the facts can be found in the court's January 15, 2013 order on defendants' first motion to dismiss ("January 15 Order").  Dkt. No. 29.  Relevant to the present motion, plaintiffs executed a promissory note in favor of SCME in the amount of $436,000, secured by a deed of trust naming plaintiffs as the borrowers, SCME as the lender, and Mortgage Electronic Registration Systems Inc. ("MERS") as the nominee and beneficiary.  In 2007, SCME ceased business operations.  On October 13, 2009, a notice of default on plaintiffs' loan was recorded in the Santa Cruz County Recorder's Office, signed by Quality Loan Service Corporation.  On November 5, 2009, a substitution of trustee ("2009 Substitution of Trustee") was recorded, signed by Debra Dente as Vice President of MERS, purporting to substitute Quality Loan Service Corporation as trustee under plaintiffs' deed of trust.  On August 1, 2011, an assignment of the deed of trust ("2011 Assignment of Deed of Trust") was recorded, executed by Stacy Sandoz as Vice President of MERS.  The 2011 Assignment of Deed of Trust purported to assign and transfer all beneficial interest under the deed of trust to Aurora Loan Services.

In the first amended complaint ("FAC"), plaintiffs asserted five causes of action, including—as relevant here—an action for cancellation of the 2009 Substitution of Trustee and 2011 Assignment of Deed of Trust pursuant to California Civil Code § 3412.  Plaintiffs argued that these transactions were invalid and void because, at the time they occurred, SMCE had ceased business operations, and the purported "Vice Presidents" signing on behalf of SMCE (Stacy Sandoz for 2011 Assignment of Deed of Trust and Debra Dente for 2009 Substitution of

Trustee) were never employees of MERS and thus lacked authority to sign on its behalf.  *See* FAC ¶¶ 25, 40.

### A.  The January 15 Order

In the January 15 Order, the court dismissed all of plaintiff Bernardi's claims with prejudice because she failed to disclose them when she filed for bankruptcy and thus they were barred.  *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001).  The court dismissed plaintiff Parmar's first four causes of action, with 20 days leave to amend.  Those claims were for: (1) quasi-contract; (2) violation of section 1692e of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e; (3) violation of section 1641(g) of the Truth in Lending Act, 15 U.S.C. § 1641(g); and (4) accounting.  The court sustained plaintiffs' fifth cause of action in part for cancellation of the 2009 Substitution of Trustee and 2011 Assignment of Deed of Trust, but dismissed plaintiffs' action to cancel the notice of default, with leave to amend.  Instead of amending any claims, on February 4, 2103, Parmar filed a notice of intent to prosecute the surviving claims for cancellation of instruments in the fifth cause of action. Dkt. No. 30.  Instead of answering, on February 18, 2013, defendants filed this second motion to dismiss on the basis of claim preclusion following final judgment in *Bernardi v. SCME Mortg.*, No. CISCV170731 in the Santa Cruz Superior Court ("State Court Action").

### B. The State Court Action

On April 4, 2011, Bernardi and Parmar filed an action against SCME, Deutsche Trustee, Aurora Loan Services, and Quality Loan Service Corp. in state court, challenging their right to collect the same mortgage loan that was originally at issue in this suit.  Although Aurora Bank was not named in the State Court Action, defendants assert and Parmar does not dispute in its opposition papers that Aurora bank is privy to the other defendants for the purposes of claim preclusion.  *See* Defs.' Br. 5 (citing FAC ¶ 43).

1
2
3
4
5
6

On November 17, 2011, the state court issued an order sustaining defendants' demurrer without leave to amend as to the operative, second amended complaint ("State SAC").  On December 22, 2011, the state court entered judgment against plaintiffs, stating: "Defendants' Demurrer is sustained with no leave to amend given."  Dkt. No. 32, Ex. 3.   On March 9, 2012, the state court served notice of entry of judgment to the parties.  *Id.*[1]

7
8
9
10
11
12
13
14
15
16
17
18
19

After the state court judgment and notice to the parties, on April 24, 2102, defendants filed the first motion to dismiss in this federal action.  Dkt. No. 19.  Although the state court entered judgment in favor of defendants on almost identical claims, defendants did not raise the State Court Action as a basis for stay or dismissal of this action in the first motion to dismiss.  Defendants contend that the state court judgment did not became final until May 8, 2012 (after the deadline to appeal had passed), *see* Cal. Court Rule 8.104 (appeal must be filed within sixty days of the service of "Notice of Entry" of judgment), and thus the defense of claim preclusion was not available when defendants filed the first motion to dismiss.  Now that the judgment is final, defendants contend that claim preclusion bars the present claims for cancellation of the 2009 Substitution of Trustee and the 2011 Assignment of Deed of Trust because the state court judgment was a final decision against Parmar on those claims.

20
21
22
23
24
25
26
27

[1] At the hearing, plaintiff's counsel referenced a different date sometime in November 2011 for notice of entry of judgment in the State Court Action with respect to the particular defendants in this action.  This date is not reflected in the state court docket that is part of the record before this court.  All that is reflected in November 2011 is an "order sustaining demurrer without leave to amend," *see* Dkt. No. 31, Ex. 1, which is not a "Notice of Entry" of judgment sufficient to trigger the period to appeal.  *See* Cal. Court Rule 8.104.  Thus, in determining finality of the state court judgment, the court relies on the date reflected in the record, March 9, 2012.  *See* Dkt. No. 31, Exs. 1, 3 (reflecting that "Notice of Entry of Judgment Filed by Deutsche Bank National Trust Co[ ]Americas, Aurora Loan Services" was sent on March 9, 2012 and entered into the state court docket on March 12, 2012).  This is also the date defendants appear to have reasonably relied on in their decision not to assert res judicata in the original motion to dismiss.  In any event, the court's disposition ultimately does not depend on the issue of waiver, so the court's reliance on this date does not affect the disposition in favor of plaintiff.

28

The court grants the defendants request for judicial notice of the following state court records: (1) the docket in the State Court Action; (2) the second amended complaint in the State Court Action; and (3) notice of entry of judgment and the judgment sheet in the State Court Action.  *See* Dkt. No. 32, Exs. 1-3; *Moralez v. Whole Foods Market, Inc.*, --- F. Supp. 2d ---, 2012 WL 4369603, at *4 (N.D. Cal. 2012) ("In ruling on a motion to dismiss under Rule 12(b)(6), district courts are generally limited to the material in the pleadings; however, the Court may take judicial notice of 'matters of public record' without converting the motion into one for summary judgment.").

## II.  ANALYSIS

### A.  The Parties' Arguments

Defendants contend that they timely raised the claim preclusion defense because the state court judgment was not final when they filed their first motion for summary judgment because the period to appeal had not yet expired.   Defendants assert that, now, claim preclusion bars Parmar's remaining claims for cancellation of the 2009 Substitution of Trustee and 2011 Assignment of Deed of Trust because Parmar raised or could have raised these claims in the State Court Action. Although defendants admit that Parmar did not specifically raise a claim for cancellation of the 2011 Assignment of Deed of Trust in the State Court Action, they assert that Parmar challenged any future assignment of the mortgage, *see* Dkt. No. 32, Ex. 2, State SAC, ¶¶ 35-36, 80, 129, which effectively encompassed the 2011 Assignment of Deed of Trust.  Defendants also argue that Parmar *could* have specifically raised a claim for cancellation of the 2011 Assignment of Deed of Trust in the State Court Action because Parmar filed the State SAC about two weeks *after* the 2011 Assignment of Deed of Trust was publicly recorded.  Thus, defendants contend that Parmar was placed on constructive notice of the assignment, could have raised the claim for cancellation but failed to do so, and is thus barred from asserting that claim here.

First, Parmar counters that defendants waived their res judicata defense by failing to raise it in their first motion to dismiss, which they filed over four months *after* the state court entered judgment and over one month after notice of entry of the judgment.  Second, even if no waiver occurred, Parmar argues that res judicata does not apply to his claim for cancellation of the 2011 Assignment of Deed of Trust[2] because that claim was not raised, and could not reasonably have been raised, in the State Court Action.  To support his argument that the claim could not reasonably have been raised, Parmar relies on: (1) the fact that the 2011 Assignment of Deed of Trust occurred nearly four months after he filed the State Court Action; and (2) the allegation that he was unaware of the Assignment when he filed the State SAC, which he contends was objectively reasonable given the proximity between the two events.  Opp. Br. 7.  The court addresses waiver and claim preclusion in turn.

## B.  Waiver of the Defense of Res Judicata

"Claim preclusion is an affirmative defense which may be deemed waived if not raised in the pleadings."  *Clements v. Airport Authority of Washoe Cnty.*, 69 F.3d 321, 328 (9th Cir. 1995). Here, defendants have not filed an answer, but rather raised their claim preclusion defense in the present motion to dismiss.  Although res judicata is an affirmative defense that generally must be raised in the pleadings, *see* Rule 8(c), "[a] motion to dismiss predicated on undisputed facts may properly invoke res judicata as a ground for dismissal," *Moralez*, --- F. Supp. 2d. ---, 2012 WL 4369603, at *4 (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).  Plaintiffs argue that, by failing to raise the defense in their first motion to dismiss, defendants waived the defense under Rule 12(g)(2).  *See* Rule 12(g)(2) ("[A] party that makes a motion under this rule may not

---

[2] Parmar does not oppose defendants' res judicata argument with respect to the claim for cancellation of the 2009 Substitution of Trustee.  The court considers any opposition to dismissal of this claim to be waived, and GRANTS defendants' motion to dismiss this claim.

make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

  **i.**  **Finality for the Purposes of Claim Preclusion under California Law**

  The general rule under the Restatement (Second) of Judgments is that a judgment is "final" for the purpose of claim preclusion *before* the period to appeal has expired. *Clements*, 69 F.3d at 329 n.7 ("In some jurisdictions, pendency of an appeal precludes a judgment from being considered 'final' for purposes of [the] preclusion doctrine. However, *the general rule is that a judgment may be treated as final for purposes of preclusion notwithstanding the fact that it may be subject to reversal on appeal*." (citing Restatement (Second) of Judgments § 13 comment (f), § 16 comment (a) (1982)) (emphasis added)); *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 735 n.2 (Cal. App. 1988) ("[T]wo years after the district court's decision in the [prior action] . . . and immediately after we affirmed the [district court's decision in the prior action], Tenneco moved the court to dismiss Kern's claims on res judicata grounds. *The court pointed out that Tenneco had not needed to wait until the appeal of the price case was decided to bring up the issue*." (citing Restatement (Second) of Judgments § 13 comment (f) (1982)) (emphasis added)); *Negrete v. Allianz Life Ins. Co. of North Am.*, 2010 WL 4116852, at *6 (C.D. Cal. Aug. 18, 2010) (finding waiver of res judicata where defendants waited until the judgment became "final").

  The cited cases, however, applied Nevada law (*Clements*), federal law (*Kern Oil*), and Minnesota law (*Negrete*).  Here "[w]e [must] look to California law to determine the *res judicata* effect of a California judgment."  *Robi v. Five Platters, Inc.*, 838 F.2d 318, 323 (9th Cir. 1988).  "Unlike the federal rule and that of several states, in California the rule is that the finality required to invoke the preclusive bar of res judicata is not achieved

1

until an appeal from the trial court judgment has been exhausted or the time to appeal has

2

expired." *Franklin & Franklin v. 7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th

3

1168, 1174 (2000); *see Clements*, 69 F.3d at 329 n.7 ("Nevada appears to follow the

4

general view—according finality to judgments notwithstanding opportunities to appeal.

5

*See Baker v. Leary*, 70 Nev. 152 (1953) (*contrasting the Nevada and California rules*)."

6

(emphasis added)).  Accordingly, defendants are correct that, applying California law, the

7

defense of res judicata was not available until the period for appeal had passed in the State

8

9

Court Action.  Nevertheless, defendants could have waived the defense under federal law

10

if they acquiesced to dual proceedings.[3]

11

      **ii.**        **Waiver Based on Acquiescence to Dual Proceedings**

12

       In *Clements*, the Ninth Circuit held that "the failure of the defendant to object to the

13

prosecution of dual proceedings while both proceedings are pending also constitutes waiver [of

14

the claim preclusion defense]." *Id.* (following the Third Circuit, the First Circuit, and the

15

Restatement (Second) of Judgments § 26(1)(a) (1982)).  Comment a to Restatement (Second) of

16

Judgments § 26 provides:

17

> Where the plaintiff is simultaneously maintaining separate actions based upon
> parts of the same claim and in neither action does the defendant make the
> objection that another action is pending based on the same claim, judgment in one
> of the actions does not preclude the plaintiff from proceeding and obtaining
> judgment in the other action. The failure of the defendant to object to the splitting
> of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

18

19

20

21

22

       In *Clements*, plaintiffs filed dual proceedings in Nevada state court and federal district

23

court for judicial review of their employment terminations (originally reviewed through the

24

25

_____

26

[3] The issue of waiver, unlike the issue of the preclusive effect of a judgment, is governed by federal law. *McGinest v. GTE Serv. Corp.*, 247 Fed. Appx. 72, 74 (9th Cir. Aug. 30, 2007) (citing

27

*Clements*, 69 F.3d at 328).

28

Airport Authority's administrative grievance process).  *Id.* at 327.  The Nevada court first, and then the federal court both entered judgment in favor of defendants.  *Id.*  In neither case did the defendants assert the other action as a basis for dismissal or stay.  *Id.*  The plaintiffs appealed both decisions.  On appeal, the Ninth Circuit requested briefing on the preclusive effect of the Nevada state judgment.  *Id.*  The defendants filed supplemental briefs on issue preclusion, but did not raise claim preclusion.  *Id.*  After oral argument on appeal in the federal forum, the Nevada Supreme Court affirmed the Nevada state decision, and the Ninth Circuit again requested supplemental briefing on the preclusive effect of the Nevada judgment.  *Id.*  It wasn't until the second round of supplemental briefing that the defendants argued that the entire federal action was barred under the doctrine of claim preclusion.  *Id.*  In these circumstances, the Ninth Circuit held:

> Allowing the defendants to assert claim preclusion at this late stage would work a substantial injustice on the plaintiffs.  At the time this federal action commenced, the petition for judicial review was still pending in the state district court.  If the defendants had asserted their defense at that time, either by formally objecting to the dual proceedings through a motion to dismiss or by asserting the defense in their responsive pleadings, the plaintiffs would have timely notice of the defendants claim and would have been able to take appropriate action in the state court proceedings . . . .  Rather than asserting the defense when timely, defendants have waited until *several years* after the original federal complaint was filed.  Under *any* generous standard of judicial discretion, this is far too late; and thus, we decline to recognize the defendants' belated assertion of this defense.

*Id.* at 329 (emphases in original).

Unlike in *Clements*, where the defendants waited "*several years* after the original federal complaint was filed," *Clements*, 69 F.3d at 329, here, defendants asserted their claim preclusion defense in their first filing after the state court judgment became final under California law.  *See supra* Part II.B.i (explaining that, unlike the majority of states and federal law, a California state court judgment does not have a preclusive affect until after the period to appeal has elapsed); *Clements*, 69 F.3d at 329 n.7.  Although the court is not clear as to why the defendants did not

raise the state court judgment earlier, at least as a basis to stay this case, the defendants did not clearly acquiesce to the splitting of Parmar's claims in dual proceedings in the same way as in *Clements*.  Relying on California law, defendants could have believed that it was improper to raise the defense of claim preclusion until after the period to appeal in the State Court Action had elapsed.

Moreover, in *Clements*, plaintiffs would have suffered substantial prejudice if claim preclusion applied.  *Id.* at 329 (explaining that, had defendants objected to the dual proceedings at the time the federal action was filed, plaintiffs could have amended their state court action to include the federal claims).  In *McGinest*, the Ninth Circuit interpreted *Clements* as requiring prejudice to apply waiver.  247 Fed. Appx. at 75 ("While the *Restatement* indicates that waiver can be founded simply on a defendant's failure to raise any sort of objection to there being two pending lawsuits, *Clements* supports that the plaintiff must also have suffered some prejudice in order to apply waiver.").  In contrast to *Clements*, here, Parmar suffers no additional prejudice based on this later assertion of claim preclusion than if defendants had asserted the defense in their first motion to dismiss.  At the time defendants filed the first motion to dismiss, the state court had already entered judgment, and although it had not yet become final, Parmar could not have amended the state court pleadings at that late stage to raise a claim for cancellation of the 2011 Assignment of Deed of Trust in the state forum.  Thus, under either timeframe, Parmar would not have been able to litigate the issue in the state court, and necessarily must argue that his new cancellation claim is not barred.

For these reasons, the court holds that defendants did not waive the defense of claim preclusion and turns to the merits of the defense.

**C.  Claim Preclusion**

"Claim preclusion 'applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties.'" *Cell Therapeutics, Inc. v. Lash Grp. Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2010) (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)).  To determine whether there is an identity of the claims, courts "look at four criteria, which we do not apply mechanistically: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).  As a prerequisite to the application of the doctrine, the parties must have had a "'full and fair opportunity' to litigate the claim" in the prior action.  *Commc'ns Telesys. Int'l v. Cal. Pub. Util. Comm'n*, 196 F.3d 1011, 1018 (9th Cir.1999) (quoting *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 480-81 (1982)).

### i.      Identity of Claims

Here, contrary to defendants' assertion, plaintiff did not actually raise a claim for cancellation of the 2011 Assignment of Deed of Trust in the State Court Action.  The state court allegations that defendants rely on to support their position relate to any future assignments of plaintiffs' *note* and *mortgage* (or *lien*), which is distinct from the 2011 Assignment of *Deed of Trust*.  *Compare* State SAC, ¶¶ 35-36, 80, 129 *with* FAC ¶¶ 24-27.  Although the allegations do relate to the same series of events involving the same mortgage, the surviving cancellation claim here involves a determination of the validity of a specific transaction that was never decided in the state action.  Thus, under prong two of the test for identity of claims, "the rights or interests established in the prior judgment would [not] be destroyed or impaired by prosecution of the second action." *Mpoyo*, 430 F.3d at 987.  Further, under prong four of the test, the evidence to

support Parmar's claim for cancellation of the 2011 Assignment of Deed of Trust is different than that to support her claim for cancellation of the 2009 Substitution of Trustee. *Compare* FAC ¶ 35 (b)-(e); FAC Exs. B, D, and E (where Parmar specifically alleges that Stacy Sandoz is not a "Vice President" of MERS, but rather an employee of Aurora Bank, and attach as evidence Stacy Sandoz's linked in profile and the recorded assignment) *with* State SAC ¶¶ 49-58 (alleging that a different person, Debra Dente, is not authorized to sign on behalf of MERS, and alleging that a different document is fraudulent). Thus, the court finds that the surviving claim here was not sufficiently raised in the state court to support a direct bar.

### ii.    Whether the Claim Could Have Been Raised and *Western Systems*

Generally, however, claim preclusion bars courts from hearing claims that were already raised or *could have been* raised in a prior action. *See, e.g.*, *Cell Therapeutics, Inc. v. Lash Grp. Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2010). Thus, the court considers whether plaintiffs *could* have raised the claim for cancellation of the 2011 Assignment of Deed of Trust in the State Court Action, such that claim preclusion would nevertheless apply. Defendants argue that plaintiff should have been aware of the 2011 Assignment of Deed of Trust before he filed the State SAC (it was recorded 19 days prior to that filing), and thus he could have raised the claim in the State SAC, but failed to do so.

Defendants rely on *Western Sytems. v. Ulloa*, 958 F.2d 864, 871-72 (9th Cir. 1992) for the proposition that the "ignorance of a party does not . . . avoid the bar or res judicata unless the ignorance was caused by the misrepresentation or concealment of the opposing party." In *Western Systems*, however, the plaintiff was attempting to assert a different theory of recovery in a later action supporting the same *claim* for relief. *Id.* at 871 ("The Ulloas' claim in [the first action] was for the right to repurchase *all* shares of MCS . . . . Richard Ulloa's right to repurchase *some* shares of MCS asserted in [the second action] seems part of the same recovery sought in

[the first action]. Different theories supporting the same claim for relief must be brought in the initial action." (emphases in original)).   In contrast, here, Parmar is asserting a *distinct claim* for relief, the cancellation of the 2011 Assignment of Deed of Trust, not a new theory in support of a claim that was already raised.

In *Western Systems*, there was also objective evidence that the plaintiff *was* aware of the facts giving rise to the new theory for relief:

> Richard Ulloa contends that he did not know until 'recently' that the rights of first refusal had not been exercised by the other shareholders, and that he therefore could not have asserted those rights in the 1972 proceeding. . . . Even if ignorance were sufficient to avoid the bar, that fact would not aid the Ulloas. Evidence was presented during the federal litigation concerning which stockholders had exercised their rights to purchase MCS stock under ¶ 2. It therefore appears that *the Ulloas were on notice of their potential claim* for rights of first refusal.

*Id.* at 871-82 (emphasis added).  In contrast, here, the trial court record presently before this court indicates that Parmar was *not* aware of his claim for cancellation of the 2011 Assignment of Deed of Trust when he filed the State SAC.  *See* State SAC ¶ 38 ("There is no duly acknowledged Assignment [of the deed of trust] recorded with the County of Santa Cruz that transferred an interest in Plaintiff's Note and Mortgage to Deutsche."); ¶ 27 ("There was no 'Assignment of Deed of Trust' . . . .").  Given that the 2011 Assignment of Deed of Trust was recorded just two weeks before Parmar filed the State SAC, and the fact that Parmar alleges difficulty obtaining information regarding the holders of her mortgage leading up to and throughout the State Court Action, it seems objectively reasonable that Parmar was not aware of that particular claim for relief at the time he filed the State SAC.

In *Mpoyo v. Litton Electro-Optical Systems*, the Ninth Circuit's application of the "ignorance" rule from *Western Systems* indicates that the "ignorance" must be something more than an objectively reasonable unawareness of the claim.  In *Mpoyo*, the Ninth Circuit relied on *Western Systems* to preclude the plaintiff's claim based on plaintiff's "dilatoriness" in attempting

to assert allegedly later "discovered" claims.  430 F.3d at 989.  In *Mpoyo*, plaintiff originally sued

his former employer for workplace discrimination and retaliation in violation of Title VII.  *Id.* at

986.  Two years later, plaintiff sought to amend the complaint to add claims under the Fair Labor

Standards Act ("FLSA") and Family and Medical Leave Act ("FMLA").  *Id.*  The court denied

leave to amend due to plaintiff's "dilatoriness" in seeking to add these new claims, and plaintiff

then filed a separate, second district court action asserting the FLSA and FMLA claims.  *Id.*  In

the second action, the court held that the FLSA and FMLA claims were barred by claim

preclusion.  *Id.* at 987.  The Ninth Circuit affirmed, holding that "[p]ermitting these later-filed

claims to proceed would create incentive for plaintiffs to hold back claims and have a second

adjudication.  Denial of leave to amend in a prior action based on dilatoriness does not prevent

application of res judicata in a subsequent action."  *Id.* at 989.  In *Mpoyo*, the plaintiff simply

failed to realize two alternative possible bases for relief until two years too late, and then tried to

assert these new claims as an alternative basis for recovery for the same allegedly wrongful

actions.  *Id.* at 987-89.  In contrast, here, no claim for cancellation of the 2011 Assignment of

Deed of Trust existed when plaintiffs filed the State Court Action, and Parmar could not have

asserted a claim for cancellation of an assignment of which he was reasonably not aware of.

In sum, claim preclusion does not apply here because: (1) Parmar's claim for cancellation

of the 2011 Assignment of Deed of Trust relates to a separate transaction that was never

presented or litigated in the State Court Action; and (2) Parmar's failure to raise the claim was not

due to unjustified ignorance or dilatoriness.

### III.  CONCLUSION

For the foregoing reasons, the court DENIES defendants' motion to dismiss Parmar's fifth

cause of action for cancellation of the 2011 Assignment of Deed of Trust.  Because Parmar does

not oppose defendants' motion to dismiss his claim for cancellation of the 2009 Substitution of

1    Trustee and because the state court already decided that issue, the court GRANTS defendants'

2    motion to dismiss that claim with prejudice.

3            To expedite the ultimate resolution of this case, the court orders the parties to submit, on

4    or before April 15, 2013 a proposed schedule setting a deadline for the filing of cross-motions for

5    summary judgment with respect to the sole remaining claim in this case.  The schedule should

6    allow plaintiff sufficient time to conduct necessary discovery with respect to the authority of the

7    signatory on the 2011 Assignment of the Deed of Trust to make the purported assignment.  The

8    schedule should take into account the court's belief that only limited discovery is necessary.

9

10

11

12   Dated:  March 29, 2013

13                                                    Ronald M. Whyte
                                                      United States District Court Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28